UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARINA ROCHES,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>Defendants. | Case No. 17-cv-06077-BLF<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Before the Court is Defendants County of Santa Clara, Jon Quiro, Edward Meyers, Adam Torrez, Alexander MacDonald, Ryan Hernandez, Elmer Wheeler, Theodore Shelton, Shane Bocanegra, Jason Satariano, Alberto Loaiza, Sean Lozada, and Arturo Padilla's (collectively, "Defendants") motion to dismiss the First Amended Complaint ("FAC") on the grounds that all claims asserted therein are barred by the applicable two-year statute of limitations. *See* ECF 37 ("Mot."). The Court determined that oral argument was not necessary and vacated the June 21, 2018 hearing pursuant to Civil Local Rule 7-1(b). ECF 41. For the reasons that follow, Defendants' motion to dismiss the FAC is DENIED.

**I.  BACKGROUND**

On October 24, 2017, Plaintiff Marina Roches ("Plaintiff") initiated this survival action pursuant to 42 U.S.C. § 1983 on behalf of herself and the estate of her son, Walter Roches, who died in jail in Santa Clara County on September 28, 2015. ECF 1. On February 15, 2018, the Court granted Defendants' motion to dismiss the complaint on statute of limitations grounds with leave to amend. ECF 28. Plaintiff filed the First Amended Complaint ("FAC") on March 27, 2018. ECF 35. Defendants again move to dismiss based on the statute of limitations. *See* Mot.

1   Plaintiff alleges that on September 21, 2015, 32-year-old Walter Roches was a pretrial detainee in the main jail of Santa Clara County facing misdemeanor charges. FAC ¶ 19. Walter was suffering from a mental health crisis and reported that he was feeling sad and suicidal. *Id*. ¶¶ 21-22. After jail mental health staff placed Walter on 15-minute interval checks for his own safety, correctional staff decided to move him to another floor of the jail where he could be observed. *Id*. ¶ 23.

Around 10:35 p.m. on September 21, 2015, Defendant Correctional Officer Alexander MacDonald informed Walter that he needed to be rehoused and ordered him to come to the door of his cell and put his hands through the tray slot so that he could be handcuffed. *Id*. ¶ 24. Walter lay shirtless, face down on his bunk and said "I don't want to." *Id.* MacDonald allegedly responded by spraying Walter with a chemical agent through the tray slot in the door, hitting Walter on his head, face and shoulder, causing him to cough and moan due to the painful burning. *Id.* ¶ 25. Plaintiff alleges that the deputies then escalated to spraying a room-clearing agent into Walter's cell, neither of which penetrated his catatonic state, so the deputies allegedly shot Walter from about six feet away with a riot gun meant for distances up to 55 yards. *Id*. ¶¶ 25-69.

An Emergency Response Team ("ERT") was then called to forcibly extract Walter from his cell. *Id.* ¶¶ 27, 32. In the process of "subduing" Walter, who Plaintiff alleges was already catatonic, the ERT deputies bloodied Walter's nose, busted open his lip, and caused multiple contusions on his body from head to toe. *Id.* ¶¶ 70-73, 75. Plaintiff alleges that the deputies escorted Walter to the basement where they only briefly placed him in a shower, such that the chemicals that the deputies had sprayed all over Walter's head and torso left chemical burns to his skin. *Id*. ¶ 76. During the escort, Plaintiff alleges that one of the deputies pressed a large shield against Walter's face, leaving it smeared with his blood. *Id.* ¶ 77. Walter was sent to Valley Medical Center and returned to the jail hours later. *Id.* ¶ 79. Plaintiff alleges that the County never informed Walter's family members, emergency contact, or attorney about his injuries, mental health crisis or subsequent hospitalization. *Id*. ¶¶ 80-83.

On September 28, 2015, Walter was supposed to be in court at 1:30 p.m., but at 12:37 p.m. correctional deputies made a "man down" report saying that Walter was unresponsive in his cell.

*Id.* ¶ 85. Walter was declared dead at 1:04pm. *Id.* ¶ 87. Plaintiff alleges that an autopsy done on September 29, 2015 details the devastating injuries Walter suffered during the September 21, 2015 incident. *Id.* ¶ 89. The coroner's report indicated that Walter died of sepsis from an untreated urinary tract infection and untreated mental illness and found that the use of force by the deputies may have heightened and accelerated an already delirious state. *Id.* ¶ 90. On September 29, 2015, the County published an official announcement stating: "At this point in the investigation, the autopsy of Mr. Roches did not disclose evidence of foul play or acute injury that would otherwise explain his tragic death. The determination of the definitive cause and manner of death is expected to take weeks given the multitude of tests and studies ordered." *Id.* ¶ 98.

Plaintiff alleges that on or about September 30, 2015, Walter's great-aunt in the United States called Walter's grandmother in El Salvador to tell her that Walter was dead. *Id.* ¶ 104. Plaintiff alleges that she and her mother both fainted at the news and the phone got disconnected. *Id.* The great-aunt gave no details regarding Walter's death and the women had no phone number to call her back. *Id.* Plaintiff alleges that she has never owned a computer, used the internet, email or Google. *Id.* Accordingly, Plaintiff alleges that on September 30, 2015, she did not know that Walter had been in jail at the time of his death. *Id.* ¶ 101. Plaintiff alleges that she does not speak English, so she could not call authorities to find out what had happened to Walter, and even if she could speak English, she would not have known who to call regarding the circumstances of his death since she did not know he was even in Santa Clara County. *Id.* ¶ 105. Plaintiff alleges that she knew Walter had suffered substance abuse and mental health issues, so she assumed that he had died an early but natural or accidental death. *Id.* ¶ 106. Plaintiff alleges that she did not suspect any foul play. *Id.*

On November 6, 2015, Plaintiff alleges that Walter's body arrived in El Salvador, having been shipped by a Bay Area funeral home that the County contracted with. *Id.* ¶ 111. Plaintiff alleges that she never removed Walter's clothing and therefore had no idea that he was injured. *Id.* ¶ 113. Although an official autopsy report was signed on December 24, 2015, the medical examiner indicated that the manner of death was "Natural" and the cause of death was "sepsis due

to urinary tract illness complicating exhaustive mania due to untreated mental illness." *Id.* ¶ 99.[1]

On October 4, 2017, Plaintiff alleges that she learned through her retained counsel that Walter was in jail at the time of his death, and that force had been used on him by jail deputies shortly before his death. *Id.* ¶¶ 101-102. Accordingly, Plaintiff alleges that between September 30, 2015 and October 4, 2017, she knew only that Walter had died, and it was not until October 4, 2017 that she learned of the circumstances surrounding his death. *Id.* ¶¶ 100-106. Plaintiff alleges that the details regarding the use of force on Walter were obtained by Plaintiff's counsel in other litigation and were not publicly available—so Plaintiff alleges she could not have learned this information herself until she retained counsel. *Id.* ¶ 109.

Defendants move to dismiss the FAC based on the applicable two-year statute of limitations, arguing that Plaintiff's claim accrued when Walter died on September 28, 2015. *See* Mot. at 5. Plaintiff argues that due to delayed accrual of her claims, she timely filed this lawsuit on October 24, 2017. *See* Opp'n at 1, ECF 38.

## II.  LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] Plaintiff alleges that even if she had sought Walter's death certificate, she would not have been able to obtain it until at least December 24, 2015, when it was signed, and it would have shown that he died of natural causes which would not put her on notice of Walter's injuries. FAC ¶ 110.

4

Although a statute-of-limitations assertion is an affirmative defense, a defendant may still raise a motion to dismiss based on the defense if the running of the limitations period is apparent on the face of the complaint. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (stating that, "[i]f the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss"). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.; see also Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim").

## III. DISCUSSION

Whether Plaintiff's Section 1983 claims against Defendants are timely depends on (1) the applicable statute of limitations period; (2) the date Plaintiff's claim accrued; and (3) whether the limitations period was tolled. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007); *Lucchesi v. Bar–O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003). In certain circumstances, a defendant may also be equitably estopped from relying on the statute of limitations. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).

Section 1983 claims are subject to the statute of limitations for personal injury torts of the state in which the claim arises. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). As before, the parties agree that California's two-year statute of limitations for personal injury torts applies to Plaintiff's claims. *See* Prior Order at 4 (citing *Maldonado v. Harris*, 370 F.3d 945, 954–55 (9th Cir. 2004) (holding that Cal. Civ. Proc. Code § 335.1 applies to Section 1983 claims arising in California)). However, the parties dispute when Plaintiff's claims accrued and whether the limitations period was tolled. Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008); *see also Estate of Joshua Claypole v. Cty. of San Mateo*, No. 14-CV-02730-BLF, 2016 WL 127450, at *14 (N.D. Cal. Jan. 12, 2016). Although federal law governs when the claim accrues, in actions where a federal court

borrows the state statute of limitations such as in a § 1983 action, the Court borrows applicable provisions under *state law* for tolling the limitations period. *See Lucchesi v. Bar–O Boys Ranch,* 353 F.3d 691, 694 (9th Cir. 2003).

Defendants argue that because each cause of action in the FAC includes Walter's death as a factual basis and claimed injury, Plaintiff's Section 1983 claims accrued on the day Walter died—September 28, 2015. *See* Mot. at 5. Defendants concede that the delayed discovery rule postponed accrual of Plaintiff's claims until September 30, 2015, when Plaintiff learned of Walter's death. *Id.* However, Defendants argue that because Plaintiff fails to allege any investigation into her son's death, she cannot rely on her ignorance of the circumstances to delay accrual of her claims until she retained counsel on October 4, 2017. *Id.*

Plaintiff argues that Walter's death is not automatically an "injury" that triggers the statute of limitations period. *See* Opp'n at 4. Plaintiff urges the Court to find that her claims accrued on October 4, 2017, when she retained counsel, because that is when she learned of the injury and Defendants do not point to any authority for their proposition that death itself puts an heir on notice to investigate her claims. *Id.* Even if Plaintiff's obligation to investigate arose when she received Walter's body from the funeral home on November 6, 2015, Plaintiff argues that the lawsuit was still timely because it was filed within two years of Walter's body arriving in El Salvador. *Id.* at 7.

Based on the allegations in the FAC, and the lack of persuasive authority from Defendants, the Court cannot find at the pleading stage that Plaintiff's claims are barred by the two-year statute of limitations.[2] Rather, Plaintiff has adequately alleged facts to establish the application of the delayed discovery rule. In general, a cause of action accrues when the wrongful act is done and not at the time of plaintiff's discovery of the wrongful act. However, under California's delayed discovery rule, "a cause of action will not accrue until the plaintiff discovers or should have

---

[2] The Court acknowledges that this ruling deviates from the Court's Prior Order, which held that Plaintiff failed adequately to allege reasonable diligence in the investigation of her claims such that the accrual date extended beyond September 30, 2015 pursuant to the delayed discovery rule. *See* Prior Order at 5. The Court has reconsidered its position in light of Plaintiff's amended allegations and applicable law.

6

discovered, through the exercise of reasonable diligence, all the facts essential to the cause of action." *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1246 (1998), *as modified on denial of reh'g* (Oct. 29, 1998). In other words, the discovery rule permits the accrual of an action to be postponed and the running of the limitations period to be tolled "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 807 (2005). A plaintiff has reason to discover a cause of action when she "has reason at least to suspect a factual basis for its elements." *Id.*; *see also S.M. v. Los Angeles Unified Sch. Dist.,* 184 Cal.App. 4th 712, 717 (2010) ("[W]e look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.").

As pled, Plaintiff had no reason to suspect any wrongdoing on September 30, 2015 when she learned that Walter was dead. It is far from clear from the face of the pleading that Plaintiff had "all facts essential to the cause of action" after the short phone call with Walter's great aunt. *See Prudential Home Mortg. Co.*, 66 Cal. App. 4th at 1246. In fact, Plaintiff alleges that she assumed Walter had died a natural or accidental death based on her knowledge of Walter's substance abuse. FAC ¶ 106. Plaintiff alleges that she had no information or access to information about Walter's death, and she had no reason to believe that Walter was in jail when he died. *Id.* ¶ 104. It could be argued that the delivery of Walter's body from the funeral home to El Salvador gave Plaintiff reason to suspect a factual basis for the elements of her causes of action because at that point Walter's death was confirmed and Plaintiff was put on notice that some entity was shipping his body to her from California. However, Walter's body arrived on November 6, 2015, which is within the two-year limitations period and would still render Plaintiff's lawsuit timely filed.[3]

In order to rely on California's discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose complaint shows on its face that [her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show: (1) the time and manner of discovery; *and*

---

[3] Defendants argue at length that Plaintiff lacked diligence in investigating her son's death, and did not ask how or where he died for over two years until Plaintiff retained counsel. However, as pled, the Court finds that Plaintiff did not have reason to suspect wrongdoing until the body arrived in El Salvador and her Complaint was filed within two years of that date.

7

(2) the inability to have made earlier discovery despite reasonable diligence." *McKelvey v. Boeing N. Am., Inc.,* 74 Cal.App. 4th 151, 160 (1999). Plaintiff has pled sufficient facts to establish that she was not on inquiry notice of her claims until at least November 6, 2015—which is within the two-year statute of limitations period. *See Fox,* 35 Cal.4th at 807–08 ("The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.") The Court agrees with Defendants that Plaintiff need not have known the full extent of her injuries or Defendants' alleged involvement in Walter's death in order for Plaintiff's claims to accrue. However, there is no allegation demonstrating that Plaintiff was aware of or should have been aware of the factual basis for her claims before Walter's body arrived in El Salvador. As alleged, Plaintiff's failure to investigate her claims based solely on the September 30, 2015 phone call was reasonable, and Defendants provide no case supporting dismissal at the pleading stage under these circumstances.

Construed liberally, the FAC alleges that Plaintiff had no reason to suspect that Walter's death was caused by wrongdoing until at least November 6, 2015. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110, 751 P.2d 923, 927 (1988) ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.") The Court accepts these well-pled factual allegations as true.

For the foregoing reasons, Plaintiff has adequately alleged that the discovery rule delayed accrual of her section 1983 claims until at least November 6, 2015, and this lawsuit was timely filed on October 24, 2017. Defendants' motion to dismiss the FAC on statute of limitations grounds is DENIED.[4] Accordingly, Plaintiff is entitled to discovery on her claims. However, at summary judgment, Defendants may have a strong statute of limitations defense based on evidence of the extensive media coverage surrounding Walter's death in September and October 2015, or other information accessible to Plaintiff that demonstrates that she should have suspected wrongdoing prior to November 2015. With a developed factual record, the Court may be able to

---

[4] Because Plaintiff has pled timely claims based on delayed discovery, the Court does not reach the question of whether equitable tolling also applies.

8

conclude as a matter of law that Plaintiff suspected or should have suspected wrongdoing at an earlier date. As pled, however, there is no statute of limitations issue on the face of the complaint. *See Jablon*, 614 F.2d at 682; *see also Supermail Cargo, Inc.*, 68 F.3d at 1206 ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim").

Defendants SHALL ANSWER the operative First Amended Complaint.

**IT IS SO ORDERED.**

Dated: July 9, 2018

_____
BETH LABSON FREEMAN
United States District Judge