JAMES R. WILLIAMS, County Counsel (S.B. #271253)
BRYAN K. ANDERSON, Deputy County Counsel (S.B. #170666)
G. ALLEN BRANDT, Deputy County Counsel (S.B. #264935)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California  95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
COUNTY OF SANTA CLARA, JON QUIRO,
EDWARD MEYERS, ADAM TORREZ,
ALEXANDER MACDONALD, RYAN
HERNANDEZ, ELMER WHEELER, THEODORE
SHELTON, SHANE BOCANEGRA, JASON
SATARIANO, ALBERTO LOAIZA, SEAN
LOZADA, AND ARTURO PADILLA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Jose)

| | |
|---|---|
| MARINA ROCHES, et al., | No. 5:17-CV-06077-BLF (NMC) |
| Plaintiffs, | **DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| COUNTY OF SANTA CLARA, et al., | [DEMAND FOR JURY TRIAL] |
| Defendants. | |

Defendants County of Santa Clara, Jon Quiro, Edward Meyers, Adam Torrez, Alexander MacDonald, Ryan Hernandez, Elmer Wheeler, Theodore Shelton, Shane Bocanegra, Jason Satariano, Albert Loaiza, Sean Lozado and Arturo Padilla (hereinafter "Defendants") answer the First Amended Complaint for Damages (hereinafter "Complaint") and allege as follows:

## INTRODUCTION

1.   Defendants deny and/or lack sufficient knowledge or information to form a belief as to the truth of the allegations and/or arguments in Paragraph 1.

2.   Defendants deny the allegations in Paragraph 2.

///

**JURSIDICTION**

3. Defendants admit that jurisdiction of this Court is invoked as alleged in Paragraphs 3-4.

**VENUE**

4. Defendants admit that venue is proper in the Northern District of California as alleged in Paragraph 5.

**PARTIES**

5. Defendants admit that Walter Roches was arrested and booked into the Santa Clara County Main Jail on September 11, 2015, released September 20, 2015, arrested and booked into Santa Clara County Main Jail on September 20, 2015, and died on September 28, 2015. Defendants lack sufficient information to admit or deny the allegations in Paragraph 6 concerning Marina Roches' relationship with Walter Roches and the allegations concerning any negotiated plea. Defendants deny the remainder of the allegations in Paragraph 6.

6. Defendants admit the allegations in Paragraph 7 concerning the County's operation of jail facilities. The remaining allegations in Paragraph 7 constitute legal conclusions and/or arguments, not facts, and, thus, Defendants are not required to admit or deny but to the extent they are deemed factual allegations they are denied.

7. Defendants admit the allegations in Paragraphs 8-18 concerning the identities of the named Defendants and their employment by the County. The remaining allegations in Paragraphs 8-18 constitute legal conclusions and/or arguments, not facts, and, thus, Defendants are not required to admit or deny but to the extent they are deemed factual allegations they are denied.

**FACTUAL ALLEGATIONS**

8. Defendants admit that Walter Roches was a pre-trial detainee at the Santa Clara Main Jail on September 21, 2015, that he had been booked on misdemeanor charges, and that he was initially housed in 4B-1, cell 15. Defendants deny the remainder of the allegations in Paragraph 19.

9. Defendants admit that a mental health referral was submitted for Roches. Defendants deny the remainder of the allegations in Paragraph 20.

10. Defendants deny the allegations in Paragraph 21.

11. Defendants admit that a mental health staff member with the first name of Sara attempted to interview Walter Roches, and that he refused to come to the door to speak to her. Defendants admit that Roches was placed on 15-minute checks. Defendants deny the remainder of the allegations in Paragraph 22.

12. Defendants admit that the Classification Unit determined that Roches would be re-housed in an observation cell in Main Jail South, 3rd Floor East. Defendants deny the remainder of the allegations in Paragraph 23.

13. Defendants admit that Officer McDonald informed Roches that he would be rehoused and attempted verbally to obtain Roches' compliance. Defendants deny that the remainder of the allegations in Paragraph 24 accurately describe the interactions between McDonald and Roches.

14. Defendants admit that Officer MacDonald applied Oleoresin Capsicum (OC) after verbal warnings and after Roches continued to refuse to comply with verbal instructions, and that Roches coughed. Defendants deny that the OC appeared to have further effects on Roches. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 25.

15. Defendants admit Roches continued to refuse to comply with verbal instructions. Defendants deny that the OC appeared to have the referenced effects on Roches. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 26.

16. Defendants admit that Officer MacDonald determined that the OC appeared to have little effect on Roches, and that MacDonald activated the Emergency Response Team (ERT). Defendants deny the remainder of the allegations in Paragraph 27.

17. Defendants admit that Sergeant Hernandez gave repeated verbal directions to Roches to come to his door so he could be handcuffed through the tray slot and be decontaminated, and that Roches refused to comply. Defendants deny that the remainder of the allegations in Paragraph 28 accurately describe the interactions between Hernandez and Roches.

18. Defendants admit that Sergeant Hernandez continued to speak with Roches in an effort to encourage Roches to come to his door so he could be handcuffed through the tray slot and be decontaminated, and that Roches refused to comply. Defendants admit that Hernandez sprayed

OC into Roches' cell.  Defendants admit that Roches sat on his bunk, stood, and sat on a stool. Defendants deny that the remainder of the allegations in Paragraphs 29-32 accurately describe the interactions between Hernandez and Roches and Roches' actions and statements.

19. Defendants admit that the ERT team approached Roches' cell during the efforts to move him.  Defendants deny the remainder of the allegations in Paragraph 33.

20. Defendants admit the allegations in Paragraphs 34 and 35.

21. Defendants admit that the ERT team approached Roches' cell in formation and were wearing protective gear.  Defendants deny the remainder of the allegations in Paragraph 36.

22. Defendants deny the allegations in Paragraph 37.

23. Defendants deny that the allegations in Paragraph 38 accurately summarize Officer MacDonald's statements to the ERT team.

24. Defendants admit the allegations in Paragraph 39.

25. Defendants admit that Lieutenant Meyers was the Watch Commander and highest-ranking officer on scene, and that Meyers dispensed Clear Out spray into Roches' cell.  Defendants deny the remainder of the allegations in Paragraph 40.

26. Defendants admit that Lieutenant Meyers was questioned about the incident in another unrelated matter.  Defendants deny that the allegations in Paragraphs 41 and 42 accurately summarize Meyers' responses.

27. Defendants admit the allegations in Paragraph 43.

28. Defendants admit that Lieutenant Meyers dispensed Clear Out a second time. Defendants deny the remainder of the allegations in Paragraph 44.

29. Defendants deny the allegations in Paragraph 45.

30. Defendants deny that the quote in Paragraph 46 appears in the manufacturer's warning concerning the FN 303.

31. Defendants admit the allegations in Paragraph 47.

32. Defendants admit that a Policy Amendment to Policy 9.25 reflecting the inclusion of the FN 303 became effective on July 20, 2009 in response to the allegations in Paragraph 48.

33. Defendants deny the allegations in Paragraphs 49 and 50.

34. Defendants admit that a formal revision to Policy 9.25 did not become effective between the July 20, 2009 Policy Amendment and September 21, 2015. Defendants deny the remainder of the allegations in Paragraph 51.

35. Defendants deny that the quote in paragraph 52 accurately describes the purpose of the FN 3030 projectile as reflected on the manufacturer's website.

36. Defendants admit that Lieutenant Meyers was questioned about the incident in another unrelated matter. Defendants deny the allegations in Paragraphs 53 and 54 accurately summarize Meyers' responses.

37. Defendants deny that the allegations in Paragraph 55 accurately state the specifications for the FN 303 as listed on the manufacturer's website. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 55.

38. Defendants deny the allegations in Paragraphs 56 and 57.

39. Defendants admit the allegations in Paragraphs 58 and 59.

40. Defendants admit that Officer Quiro deployed the FN 303 during the incident, that Quiro was certified in the use of the FN 303, and was questioned about the incident in another unrelated matter. Defendants deny the remainder of the allegations in Paragraphs 60 and 61.

41. Defendants admit that Quiro gave Roches a verbal directive to come to the door to comply, that Quiro deployed the FN 303, striking Roches in the abdomen, and that Quiro was questioned about the incident in another unrelated matter. Defendants deny the remainder of the allegations in Paragraphs 62 through 64.

42. Defendants deny the allegations in Paragraph 65.

43. Defendants admit the acts alleged in Paragraphs 66 and 67 occurred after Roches was again verbally directed to comply with instructions.

44. Defendants admit the allegations in Paragraphs 68 and 69.

45. Defendants admit that Officer MacDonald gave Roches multiple additional verbal directions and warnings prior to opening the cell door for the ERT team to enter; that Torrez, Bocanegra, Satariano, Loaiza and Lozado entered the cell; that the officers sought to control Roches in order to remove him from the cell; that the officers required time to gain control over Roches

5

because he resisted; and that Roches had a visible injury to his face when he was removed from the cell. Defendants deny the remainder of the allegations in Paragraphs 70 through 75.

46.    Defendants admit that Roches was escorted to the basement and showered. Defendants deny the remainder of the allegations in Paragraph 76.

47.    Defendants admit that medical staff reviewed Roches' condition. Defendants deny the remainder of the allegations in Paragraphs 77 and 78.

48.    Defendants admit the allegations in Paragraph 79.

49.    Defendants admit that the Sheriff's Office has not located any record of contacts with the family of Walter Roches prior to September 30, 2015. Defendants lack sufficient knowledge or information to form a belief as to the truth of whether Walter Roches was represented by counsel, or whether the emergency contact identified in Roches' booking file had any information concerning his family, or when any of these individuals learned the information as alleged in Paragraphs 80 through 83, and on that basis deny each and every such allegation contained in Paragraphs 80 through 83.

50.    Defendants admit the allegations in Paragraph 84.

51.    Defendants admit that Roches was scheduled for a hearing on September 28, 2015. Defendants further admit that Roches was found on his cell floor on September 28, 2015, that emergency medical services were called, and that Roches was declared dead. Defendants deny the remaining allegations in Paragraphs 85 through 88.

52.    Defendants admit that an autopsy of Roches was performed on September 29, 2015. Defendants deny the remainder of the allegations in Paragraph 89.

53.    Defendants deny the allegations in Paragraph 90.

54.    Defendants admit that the Report of Autopsy for Roches references the injuries alleged in Paragraphs 91 through 94.

55.    Defendants admit that the Report of Autopsy for Roches references multiple abrasions to his hands, arms, abdomen, lower back, and legs. Defendants deny the remainder of the allegations in Paragraph 95.

56.    Defendants admit the allegations in Paragraph 96.

57. Defendants deny the allegations in Paragraph 97.

58. Defendants deny the allegations in Paragraph 98.

59. Defendants admit that the Report of Autopsy for Roches bears a signature date of December 24, 2015 and states the manner of death was natural. Defendants deny the remainder of the allegations in Paragraph 99.

60. Defendants deny that Marina Roches was not contacted concerning the death of Walter Roches prior to October 4, 2017 and deny that information concerning his incarceration and death were unavailable to Marina Roches. Defendants further deny that Walter Roches' great aunt was listed as his emergency contact. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations concerning Ms. Roches' communications with her mother or aunt, or her knowledge concerning Walter Roches' medical condition and substance abuse, and on that basis deny each and every such allegation contained in Paragraphs 100 through 106. Defendants deny the remainder of the allegations in Paragraphs 100 through 106.

61. The allegations in Paragraph 107 constitute legal conclusions and/or arguments, not facts, and, thus, Defendants are not required to admit or deny but to the extent they are deemed factual allegations they are denied.

62. Defendants admit that multiple requests under the California Public Records Act were received by the County concerning Walter Roches, and that video of Roches was not released. Defendants deny the remainder of the allegations in Paragraph 108.

63. The allegations in Paragraphs 109 and 110 constitute legal conclusions and/or arguments, not facts, and, thus, Defendants are not required to admit or deny but to the extent they are deemed factual allegations they are denied.

64. Defendants admit that the County arranged for Roches' body to be sent to his family in El Salvador. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remainder of the allegations in Paragraphs 111 through 113 and on that basis deny them.

65. Defendants admit that officers identified in Paragraphs 114 through 125 were present for some portion of the efforts on September 21, 2015 to move Roches to an observation cell. Defendants deny the remainder of the allegations in Paragraphs 114 through 125.

66.     Defendants admit that Troy Beliveau was Assistant Sheriff in September 2015. Defendants admit that Lieutenant Meyers was questioned about the incident in another unrelated matter. Defendants deny that the allegations in Paragraph 126 accurately summarize Meyers' responses. Defendants deny the remaining allegations in Paragraphs 126 and 127.

67.     Defendants deny the allegations in Paragraphs 128 and 129.

68.     Defendants admit that Lieutenant Meyers prepared a Watch Commander's Summary Report. Defendants deny that the allegations in Paragraph 130 accurately summarize that report. Defendants deny the remainder of the allegations in Paragraph 130.

69.     Defendants admit that Captain Blanca Hoyt was facility commander in September 2015 and had held that position for several years prior. Defendants admit that Hoyt was questioned about the incident in another unrelated matter. Defendants deny that the allegations in Paragraphs 131 through 133 accurately summarize Hoyt's responses.

70.     Defendants deny the allegations in Paragraph 134.

71.     Defendants admit the allegations of Paragraphs 135 and 136.

72.     Defendants admit that deputy Coroner Jordan testified in favor of removing Sheriff Office oversight of the Coroner's Office. Defendants admit that the Santa Clara Board of Supervisor's voted to remove such oversight. Defendants deny the remainder of the allegations in Paragraphs 137 through 140.

73.     Defendants deny the allegations in Paragraphs 141 through 146.

**DAMAGES**

74.     Defendants are unable to admit or deny the allegations in Paragraphs 147 through 149 regarding damages but those allegations mainly constitute legal arguments, which Defendants do not have to admit or deny, and to the extent they are factual allegations they are denied.

**CLAIMS FOR RELIEF**

75.     Defendants incorporate each and every response contained in the preceding paragraphs in their response to Paragraphs 150 through 191. Defendants further deny the allegations in Paragraphs 150 through 191 as phrased and because many of the allegations constitute legal conclusions and/or arguments, not facts, and, thus, Defendants are not required to admit or deny

them and to the extent they are factual allegations they are denied.

**FIRST AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action contained therein, these answering Defendants allege that each and every cause of action of the Complaint is barred by the applicable statutes of limitations, including Cal. Civ. Proc. Code § 335.1 as applied to claims under 35 U.S.C. § 1983.

**SECOND AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that neither the Complaint nor any of its purported causes of action state facts sufficient to constitute a claim upon which relief can be granted.

**THIRD AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that the acts alleged in the Complaint, on the part of these answering Defendants, did not actually cause the injuries complained of by Plaintiffs. As such, these answering Defendants are not liable for the alleged injuries.

**FOURTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that there is no proximate causation to link the injuries complained of by Plaintiffs, with any actions on the part of these answering Defendants, if any, as alleged in the Complaint. As such, these answering Defendants are not liable for the alleged injuries.

**FIFTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that neither the Complaint nor any of its purported causes of action state a claim upon which relief can be granted because at all times Defendants acted within the scope of their discretion, with due care and in good faith fulfillment of their responsibilities pursuant to applicable statutes, rules, regulations and practices within the bounds of reason under all the circumstances known to them, and with a good faith belief that its actions

comported with all applicable federal and state laws.

### SIXTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that any acts on the part of these answering Defendants, or their employees, if any, were discretionary, and not ministerial in nature. As such, these answering Defendants are not liable for the alleged injuries.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants deny that they have deprived the Plaintiffs of any rights, privileges, or immunities guaranteed by the laws or Constitution of the United States or by the laws or Constitution of the State of California.

### EIGHTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that they did not act with malicious intent to deprive the Plaintiffs of constitutional rights or to cause other injury. These answering Defendants, therefore, allege that they are immune from liability.

### NINTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that Plaintiffs have failed to mitigate any or all of the damages alleged in the Complaint and are thereby precluded from recovering those damages which could have reasonably been avoided by the exercise of due care on Plaintiffs' part.

### TENTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that each and every cause of action in the Complaint is barred in that Plaintiffs have waived any rights Plaintiffs may have had to the amounts claimed, or any amount at all.

///

///

**ELEVENTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that Plaintiffs are barred from obtaining injunctive relief or other equitable relief by reason of the doctrine of unclean hands.

**TWELFTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that the Complaint should be dismissed based on Plaintiffs' failure to diligently prosecute this action, and to effect timely service of process.

**THIRTEENTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that a government entity is not liable for punitive or exemplary damages.

**FOURTEENTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint, and to each and every cause of action contained therein, Defendants allege that Plaintiff was careless, negligent, and at fault in and about the matters complained of, and that such carelessness, negligence and fault, proximately and concurrently caused the alleged damages sustained by Plaintiff

**FIFTEENTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that any damages suffered by Plaintiffs as alleged in the Complaint and its purported causes of action were the sole, proximate or legal result of the acts and/or omissions of third parties who were not acting within the course and scope of their employment with Defendants, and who were not agents of Defendants.

**SIXTEENTH AFFIRMATIVE DEFENSE**

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that each and every cause of action of the Complaint is barred in that Plaintiffs have failed to exhaust administrative remedies, including but not limited to statutory remedies and remedies provided by any applicable court order.

### SEVENTEENTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that their alleged conduct was privileged and/or justified under applicable law.

### EIGHTEENTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that at the time of the events alleged by Plaintiffs, the acts undertaken by Defendants were necessary to prevent harm to other third parties, or the public interest, that resulted from Plaintiffs' conduct.

### NINETEENTH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint, and to each and every cause of action, Defendants allege that at the time of the events alleged by Plaintiffs there were no clearly established constitutional rights of which Defendants knew, or should have known, that which required them to act differently.  Defendants therefore allege that they are immune from liability.

### TWENTIETH AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint, and to each and every cause of action contained therein, the County alleges that it does not have a policy, custom, or practice that violated Plaintiffs' constitutional rights.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint and to each and every cause of action, these answering Defendants allege that at no time did they act maliciously, willfully, or fraudulently to violate Plaintiffs' constitutional rights.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

As a separate, distinct, and affirmative defense to the Complaint, and to each and every cause of action contained therein, the County alleges that no basis exists upon which Plaintiffs may be entitled to an award of attorney's fees.

///

///

**RELIEF**

WHEREFORE, Defendant COUNTY OF SANTA CLARA prays as follows:

1. That Plaintiffs take nothing by their complaint;

2. That Plaintiffs' complaint be dismissed with prejudice;

3. That Defendants be awarded their costs of suit incurred herein including attorney's fees; and

4. For such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Defendants hereby demand a trial by a jury in this matter.

Dated: July 30, 2018

Respectfully submitted,

JAMES R. WILLIAMS
County Counsel

By: _____/s/_____
BRYAN K. ANDERSON
Deputy County Counsel

Attorneys for Defendants
COUNTY OF SANTA CLARA, JON QUIRO, EDWARD MEYERS, ADAM TORREZ, ALEXANDER MACDONALD, RYAN HERNANDEZ, ELMER WHEELER, THEODORE SHELTON, SHANE BOCANEGRA, JASON SATARIANO, ALBERTO LOAIZA, SEAN LOZADA, AND ARTURO PADILLA

1821966